UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DURELL R. FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-005041 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| COOK COUNTY SHERIFF POLICE | ) | |
| OFFICER LAURENCE O'ROURKE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Durell Foster brings this civil-rights lawsuit against Lawrence O'Rourke, a police officer with the Cook County Sheriff's Department, for allegedly violating the Fourth Amendment (as applied to local officers through the Fourteenth Amendment).[1] R. 33, Am. Compl. at 1.[2] Foster alleges that O'Rourke used excessive force by shooting and tasing Foster in the course of a foot pursuit. Am. Compl. O'Rourke moves to dismiss the claims for failure to adequately state a claim under Federal Rule of Civil Procedure 12(b)(6). R. 34, Mot. Dismiss. For the reasons discussed below, the motion is denied.

**I. Background**

For purposes of this motion, the Court accepts as true the allegations in Foster's amended complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Body-camera video footage of some of the events surrounding the shooting and tasing

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.
[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

1

are incorporated into the amended complaint by reference. Am. Compl. ¶ 14.[3] A motion to dismiss can be based "on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). So in evaluating O'Rourke's motion, the Court also considers the videos from WGN and from the online Vimeo platform. *See* R. 42–44.

On September 2, 2020, Foster was pulled over by police on 49th Street in Chicago. Am. Compl. ¶¶ 5–6. After stopping, Foster left his car with a shoulder bag and began walking away. Am. Compl. ¶ 6. O'Rourke pursued him, and Foster began running down the sidewalk. Am. Compl. ¶¶ 6–7. During this foot pursuit, another police officer—whom the parties identify as Officer Mercado, Mot. Dismiss at 6—approached Foster from the street and yelled "hold on, hold on." Am. Compl. ¶ 7. Foster did not heed Mercado's instruction to stop; in fact, as he neared Mercado, Foster took a gun out of his shoulder bag as he continued running. Am. Compl. ¶ 7. After Foster ran past Mercado, O'Rourke shot Foster twice from behind, once in the left shoulder and once in the left leg. Am. Compl. ¶ 8. Foster then dropped his gun and fell to the ground in the front yard of a house. Am. Compl. ¶ 10.

While on the ground, Foster took off his shoulder bag and threw it away. Am. Compl. ¶ 11. The officers surrounded and detained him. Am. Compl. ¶ 11. But

---

[3]Foster incorporates portions of the body-camera footage from his pursuit captured in two videos: https://wgntv.com/news/chicago-news/charges-filed-against-man-shot-by-cook-county-sheriffs-officer-as-more-body-cam-footage-released/ (WGN video) and https://vimeo.com/454490754/8b1e9d7372 (Vimeo video). Am. Compl. ¶ 14.

then Foster somehow got up and ran away up the front stoop to the doorway of the house in front of which he had been shot. Am. Compl. ¶ 12. The officers directed Foster to come down from the stoop, and after he did, O'Rourke tased him. Am. Compl. ¶ 12.

After the arrest, Foster pleaded guilty to one count of felon-in-possession of a firearm and two counts of aggravated assault with a firearm against a peace officer. R. 34-1, Certified Statement of Conviction/Disposition. Foster was sentenced to six years in prison and is currently serving that sentence. Am. Compl. ¶ 3; Certified Statement of Conviction/Disposition at 5.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must

---

[4]This Opinion uses "(cleaned up)" to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

3

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A claim is plausible when the plaintiff pleads facts that allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Id.* These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

What's more, "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U*, Ltd., 821 F.3d 935, 939 (7th Cir. 2016). And a dismissal based on an affirmative defense "is appropriate *only* when the factual allegations in the complaint unambiguously establish all elements of the defense." *Id.* (emphasis in original). "In other words, the plaintiff must affirmatively plead himself out of court." *Id.* (cleaned up).

### III. Analysis

In the dismissal motion, O'Rourke raises four arguments, contending that the excessive force claims as to the shooting and separate tasing (1) are barred by *Heck v. Humphrey* because they necessarily imply that Foster's underlying criminal convictions are invalid; (2) are barred under collateral estoppel (that is, issue preclusion); (3) are barred by qualified immunity; and (4) are based on conclusory and implausible allegations. Mot. Dismiss at 3–14. The Court addresses these arguments in turn.

#### A. *Heck* Bar

O'Rourke first argues that Foster's excessive-force claims are barred because a judgment for Foster would undermine the validity of his felon-in-

possession and assault convictions. Mot. Dismiss at 3–8. Foster responds that the potential success of his claims would not challenge his convictions. R. 36, Pl.'s Resp. at 6. But before addressing this first argument, it is necessary to note that O'Rourke's *Heck* arguments concentrate on the shooting claim and *not* the tasing claim. Similarly, the videos incorporated into the amended complaint only show snippets of the tasing and mostly focus on the shooting. *See* WGN video; Vimeo video. Because O'Rourke does not explain how success on the excessive-force *tasing* claim might undermine Foster's convictions, that claim survives (and would have survived even if the shooting claim were dismissed). So the following analysis focuses instead on the excessive-force shooting claim.

*Heck v. Humphrey* precludes civil-case plaintiffs from collaterally attacking their criminal convictions through 42 U.S.C. § 1983 litigation. 512 U.S. 477, 486–87 (1994). The rationale for the *Heck* bar is that, generally speaking, when it comes to federal court, state criminal convictions can only be challenged in federal court through writs of habeas corpus under 28 U.S.C. § 2254, so Congress did not authorize civil claims for which success implies the invalidity of a state conviction. *Id.* at 487. But if the action, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487 (emphasis in original). In other words, whether Foster's excessive-force shooting claim is barred by *Heck* hinges on whether its success *necessarily* implies the invalidity of the convictions. So it is time to compare the excessive-force claim against the still-valid convictions.

A claim of excessive force is analyzed under the Fourth Amendment's reasonableness standard, which asks whether a police officer's actions are objectively

5

reasonable considering the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). An officer, for instance, can use deadly force to prevent the escape of a suspect only when the officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). On the other hand, when "the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.* More generally, the Fourth Amendment prohibits an officer from employing greater force than is reasonably necessary to arrest a suspect. *Abbott v. Sangamon County*, 705 F.3d 706, 724 (7th Cir. 2013).

Turing to Foster's state convictions, the elements of the felon-in-possession crime are the knowing possession of a firearm after being convicted of a felony. 720 ILCS 5/24-1.1(a). Aggravated assault with a firearm against a peace officer requires (1) knowledge of the presence of a peace officer; (2) use of a firearm; and (3) the officer's reasonable apprehension of a battery.[5] *McCann v. Neilsen*, 466 F.3d 619, 620 (7th Cir. 2006); 720 ILCS 5/12-2(c)(6) ("A person commits aggravated assault when ... he or she … [u]ses a firearm, other than by discharging the firearm, against a peace officer.").

Measured against those state law crimes, the Court concludes that success on the excessive-force shooting claim would not imply the invalidity of either the felon-in-possession conviction or the aggravated assault. Starting with felon-in-possession of a firearm, none of the allegations in Foster's amended complaint

---

[5]"A person commits battery if the person knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3.

challenge that he knowingly possessed a firearm. In fact, he admits that he did. Am. Compl. ¶ 7. And nothing about the excessive-force claim is inconsistent with the prior-felony element of the felon-in-possession conviction. This conviction would not be undermined by a victory on the excessive-force claim.

With regard to the conviction for aggravated assault with a firearm against a peace officer, Foster alleges that during the foot pursuit with O'Rourke "another police officer approached [Foster] from the street" and that "[a]s he neared this other officer[,] [Foster] removed a firearm (pistol) from his shoulder bag and continued running." Am. Compl. ¶ 7. This statement harmonizes with the elements of the aggravated assault convictions because it acknowledges (1) the presence of the peace officers (O'Rourke and Mercado) and (2) Foster holding the firearm when he took it out of his bag, and the allegation does not contest (3) the officers' reasonable apprehension of battery. More importantly, Foster's claim that O'Rourke did not have probable cause to fear an imminent threat to himself or others at the time the officer shot Foster does *not necessarily* clash with the officers' reasonable apprehension of battery at the time Foster ran, gun in hand, *past* Mercado and *away* from O'Rourke. That is because, on the one hand, imminent threat of harm and reasonable apprehension of battery are different standards that can stand independent of the other and because Foster's allegation is that O'Rourke shot Foster *after* Foster had run by Mercado. *See* Am. Compl. ¶ 8. At the crucial time of the shooting, Foster no longer faced Mercado with a gun, but was rather running away with his back turned to the police officers. Am. Compl. ¶¶ 8–9. Thus, the amended complaint does not challenge that—before the time of the shooting—Foster had already committed the assault. The remaining question—left for later

7

proceedings and not properly decided at the pleading stage here—is whether O'Rourke had probable cause to fear imminent harm to himself or others after Foster passed Mercado.

O'Rourke, in any case, still directs the Court to four specific, "material elements" of Foster's still-valid convictions that, in his opinion, would be invalidated by a ruling in favor of Foster in this case: (1) "who was the aggressor," (2) whether Foster had a gun, (3) "whether Foster possessed *mens rea*," and (4) whether "O'Rourke's actions were reasonable and justified." Mot. Dismiss at 6–7. But these four "elements" are either not undermined by or not applicable to Foster's felon-in-possession and assault convictions.

With regard to the first two, Foster never denies that he had a gun and was the aggressor or instigator of the situation on September 2; indeed, he admits to taking out a gun from his shoulder bag while running toward Mercado. *See* Am. Compl. ¶ 7. Next, O'Rourke does not explain what he means when he refers to Foster's "*mens rea.*" In any event, Foster admits that he knowingly (if mental state is the point that the defense is making) wielded a gun while running toward one officer and away from another, and he does not contest that his actions put the officers in reasonable apprehension of battery. *See* Am. Compl. ¶¶ 6–7. Finally, as to the last supposed "element" highlighted by O'Rourke, whether O'Rourke's actions were reasonable and justified—although ultimately essential to victory in this civil-rights case—is *not* an element of felon-in-possession or of aggravated assault.

Still, related to this last point, O'Rourke's overall *Heck* argument seems to rest on the proposition that because Foster wielded a gun on the scene—regardless

8

of any other circumstances—O'Rourke was, as a matter of law, justified in shooting Foster. *See* Mot. Dismiss at 6–8. But O'Rourke does not cite any authority to support this argument. And "[a]s a general proposition, a plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not *per se* Heck-barred from maintaining a § 1983 action for excessive force stemming from the same confrontation." *McCann*, 466 F.3d at 621. In short, Foster's excessive-force claims do not challenge the validity of his state court convictions and are not barred by *Heck*.[6]

### B. Issue Preclusion

O'Rourke next argues that Foster's claims should be dismissed under the doctrine of "collateral estoppel," which is also known in modern (and more precise) jargon as issue preclusion. Mot. Dismiss at 8–11. This doctrine precludes a federal court from reconsidering an issue of fact or law that has already been decided in a prior proceeding in state court. *Allen v. McCurry*, 449 U.S. 90, 94, 96 (1980). In deciding whether issue preclusion applies, the Court looks to state law. *Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010). In Illinois, issue preclusion requires that (1) an "issue decided in the prior adjudication [be] identical to the one presented in the suit in question," (2) a final judgment was reached on the

---

[6]O'Rourke relies on two cases to make his *Heck* arguments. In *Wooten v. Law*, a plaintiff asserted a *Heck*-barred excessive force claim against prison guards. 118 Fed. Appx. 66, 69 (7th Cir. 2004). The claim was barred because the plaintiff denied having physically resisted the guards, which, "if proven, would show that he was wrongfully disciplined for assault." *Id.* Similarly, in *Okoro v. Callaghan*, a prisoner sued federal and state officers alleging that the officers had stolen his gems and cash when searching his home. 324 F.3d 488, 489 (7th Cir. 2003). Importantly, in his complaint the plaintiff insisted that he never tried to sell heroin to the officers—the action for which he had been convicted. *Id.* Foster's case is distinguishable because he either admits or does not deny the facts that support his still-valid state court convictions. *See* Am. Compl. Thus, Foster has not "pleaded himself into *Heck*-barred territory." *Wooten*, 118 Fed. Appx. at 69.

merits in the prior adjudication, and (3) the precluded party was "a party or in privity with a party" to the prior adjudication. *Id.* (cleaned up). It follows that a criminal conviction precludes relitigating issues already decided in that proceeding. *Id.*

Here, the second and third requirements of issue preclusion are satisfied. Mot. Dismiss at 10. So, whether Foster's excessive force claims are precluded depends on whether the issues presented here are identical to those decided in the state criminal proceeding. This question closely relates to the *Heck*-bar analysis because Foster pleaded guilty to felon-in-possession and aggravated assault without going to trial. That means that no factual or legal issues were decided beyond those necessary to satisfy the *basic elements* of the crimes of felon-in-possession of a firearm and aggravated assault with a firearm against a peace officer. The parties also did not provide a transcript of the plea colloquy that might show that any other issues were decided. So Foster does not contradict (at least at the pleading stage) any issues that were already decided in criminal court.

O'Rourke contends that Foster attempts to relitigate "all of the same material issues which were previously adjudicated in state court, most notably that [Foster] was guilty of possession of a firearm by a felon and of aggravated assault against peace officers." Mot. Dismiss at 11. But absent the transcript of the plea colloquy, there is no evidence right now that "the issues of Officer O'Rourke's actions and the justification behind the use of force" were decided in the state court. Mot. Dismiss at 11. In fact, as O'Rourke concedes, in his criminal proceeding Foster "did not prove the existence of excessive force at any point" during his arrest.

10

Mot. Dismiss at 11. That is the point: the officers' use (or not) of excessive force was not at issue in the state court plea proceeding (as far as is known now).

This case is distinguishable from *Brown v. City of Chicago*, which O'Rourke cites. In that case, the plaintiff claimed that the police officer shot him without justification because the plaintiff did not even possess a gun. 599 F.3d at 773–74. That claim was precluded because the plaintiff's earlier convictions of aggravated assault, aggravated unlawful use of a weapon, and unlawful possession of a weapon by a felon "necessarily determined" that he in fact did possess a gun and pointed it at the officer. *Id.* at 775. Unlike the plaintiff in *Brown*, Foster does not deny being a felon, possessing a gun, or taking the gun out of his shoulder bag while running toward one officer and away from another; nor does he deny that the officers had a reasonable apprehension of battery. *See* Am. Compl. ¶ 7.

O'Rourke also contends that since Foster "admitted to the acts supporting his conviction of aggravated assault with a firearm against peace officers … it can be inferred that any force used against [Foster] was not excessive." Mot. Dismiss at 11. The question for issue preclusion, however, hinges not on whether O'Rourke used force reasonably, but rather on whether the issue of the reasonableness of force used was decided when Foster plead guilty to felon in possession of a firearm and aggravated assault. It was not. So the excessive-force claims are not barred by issue preclusion.[7]

---

[7]Here again, because O'Rourke focuses his issue-preclusion argument on the shooting and not the tasing, the excessive-force tasing claim would proceed even if the shooting claim had been dismissed under issue preclusion.

11

## C. Qualified Immunity

O'Rourke raises a third affirmative defense in his motion to dismiss—qualified immunity—on the ground that his actions constituted an objectively reasonable response to Foster's aggravated assault with a firearm. Mot. Dismiss at 11–13. In opposition, Foster contends that the facts alleged in the amended complaint do not run afoul of qualified immunity, at least at the pleading stage. Pl.'s Resp. at 4–6.

Qualified immunity protects government officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* To defeat qualified immunity, a plaintiff must establish that (1) "the official violated a statutory or constitutional right" and (2) "the right was clearly established at the time of the challenged conduct." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (cleaned up). A right is "clearly established" if the conduct is so clearly prohibited that every "reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The court is free to decide which prong to address first; if either inquiry is answered in the negative, the defendant official is entitled to qualified immunity. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017).

With regard to the clearly established prong, Foster bears the burden of demonstrating that a right was clearly established at the time the alleged violation

occurred. *See Green*, 868 F.3d at 633. This demonstration "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (cleaned up). To show that the law was clearly established, a plaintiff can point to a "closely analogous case" finding the alleged violation unlawful. *Reed*, 906 F.3d at 546.

Finally, even though qualified immunity should be decided at the earliest possible stage" since it is "the ability to be free from suit," *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000), an award of qualified immunity is rarely appropriate at the pleading stage. *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). This is because a qualified immunity defense depends "on the facts of the case" and a "plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). After all, qualified immunity is an *affirmative* defense.

Even though O'Rourke correctly recites the qualified immunity test in the dismissal motion, he argues only that Foster's allegations in the amended complaint foreclose the possibility that O'Rourke violated a right; he does not argue in the alternative that the allegedly violated right was not clearly established. *See* Mot. Dismiss at 12–13; Def.'s Reply at 6–9. Because of this failure to raise an available argument, the Court only considers the first step of the qualified immunity test—whether Foster's own allegations establish that O'Rourke did not violate a constitutional right. *See Reed*, 906 F.3d at 550–51 (inquiring about a possible constitutional violation after finding caselaw clearly established that excessive

confinement of a plaintiff in isolation could violate "the Fourteenth and/or the Eighth Amendment").[8]

Although dismissal based on qualified immunity is a close call, the Court notes that very limited facts are part of the record at this pleading stage, even with the incorporated video footage. Even with the videos and the allegations in the amended complaint, it is unknown what preceded the attempted traffic stop; what the officers themselves saw and perceived, as distinct from the body-camera perspective; and what happened after Foster came down the front steps of the house and before he was tased. This information is necessary to provide the full context of the arrest from start to finish (or, more precisely, to when force was applied) and to accurately gauge the reasonableness of O'Rourke's actions. The reasonableness inquiry also would ask whether civilians (or other officers) were around the scene; knowing that would help the Court understand the degree of potential harm to others.

O'Rourke argues that it was objectively reasonable to believe that Foster's actions posed an imminent threat of harm and danger to the officers or others

---

[8]Though O'Rourke does not expressly argue the clearly-established prong of qualified immunity, Foster still points the Court to "a suspect's constitutional right not to be shot unless the officer reasonably believes the suspect poses a threat to the officer or someone else." Pl.'s Resp. at 5 (quoting *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018)). But this attempt to classify a right as clearly established is insufficiently particularized. To satisfy the clearly established prong of qualified immunity, the right allegedly violated must have been clearly established "in a more particularized, and hence more relevant, sense." *Brosseau*, 543 U.S. at 198–200 (cleaned up) (framing the situation as "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight"). It does seem that, at the summary judgment stage, when the particularized facts are all in place, O'Rourke might very well be able to successfully assert qualified immunity at that stage of the case, after the "facts essential to this defense typically emerge during discovery." *Roldan*, 52 F.4th at 339. At that time, Foster would need to demonstrate that the alleged violation was clear based on the *particular* facts of this case.

under the circumstances so that the shooting and tasing were clearly justified. Mot. to Dismiss at 13; Def.'s Reply at 6–9. But as just explained, even with the videos, that question cannot be properly resolved at this stage without more facts. *See Reed*, 906 F.3d at 550–51 (holding that the defendant was not entitled to qualified immunity at the dismissal-motion stage because the court could not determine the reasonableness of the actions of the officer without knowing the reasons behind the plaintiffs' isolated confinement). For this reason—and at this pleading stage—Foster's claims survive dismissal based on qualified immunity.[9]

### D. Plausibility

Finally, O'Rourke argues that Foster's allegations are conclusory and implausible on their face. Mot. to Dismiss at 13–14. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (cleaned up). To state a "plausible" claim, a plaintiff only needs to include "enough details about the subject-matter of the case to present a story that holds together." *Catinella v. County of Cook*, 881 F.3d 514, 516 (7th Cir. 2018).

First, it is worth noting the cursory nature of O'Rourke's plausibility argument, which lacks analysis and any real argument. In any event, Foster's excessive-force claims are plausible. Foster alleges that he was shot in the back by O'Rourke while he was running away and after he ran past Mercado. Am. Compl.

---

[9]As to the shooting claim (not necessarily as to the tasing), again the Court notes that—depending on the evidence from discovery—O'Rourke might very well have a solid qualified immunity argument given that, even while running away, Foster likely could still easily turn around to shoot the officers or harm others nearby. That type of argument would be more difficult to make with regard to the tasing, considering that one of the videos apparently shows that Foster was unarmed at the time and already on the ground when he was tased. *See WGN Video*.

¶¶ 8–9. It is reasonable to infer at the pleading stage (when Foster gets the benefit of reasonable inferences) that Foster "intended to keep running and did not pose an imminent threat of serious bodily harm." Pl.'s Resp at 2.[10]

Foster also alleges that he was tased after coming down the stairs from the stoop of the house and being detained. Am. Compl. ¶¶ 12–13. Again, the video footage does not include the events immediately before the tasing, like what Foster did after coming down the steps; it only shows that O'Rourke tased Foster, who was lying on the ground unarmed and surrounded by police officers. *See* WGN video; Vimeo video. So, it is plausible—based on the amended complaint and incorporated video footage and drawing reasonable inferences in favor of Foster—that O'Rourke used excessive force first when he shot Foster and then again when he tased him.

## IV. Conclusion

O'Rourke's motion to dismiss is denied. The Defendants shall answer the amended complaint by April 21, 2023. The parties shall make Rule 26(a)(1) disclosures on April 28, 2023, and propose a discovery plan in a status report filed on April 28, 2023. The tracking status hearing of April 21, 2023, is reset to May 5,

---

[10]O'Rourke alleges Foster's gun was swinging "back and forth" while Foster was running away. Def.'s Reply at 8–10. This is not evident in the video footage. *See WGN Video; Vimeo Video.*

16

2023, at 8:30 a.m., but to track the case only (no appearance is required, the case will not be called).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2023